Joshua M. George, SBN: 244565
george@ammcglaw.com
Chase W. Martin, SBN: 260444
cmartin@ammcglaw.com
ADAMSKI MOROSKI MADDEN CUMBERLAND
 & GREEN LLP
*Mailing Address*:  Post Office Box 3835
San Luis Obispo, CA  93403-3835
*Physical Address*:  6633 Bay Laurel Place
Avila Beach, CA  93424
Telephone: (805) 543-0990
Facsimile: (805) 543-0980
Attorneys for Plaintiff, ZL Technologies, Inc.

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZL TECHNOLOGIES, INC.,<br><br>          Plaintiff,<br><br>v.<br><br>WESTERN & SOUTHERN FINANCIAL GROUP, INC.; DOES 1-50, inclusive,<br><br>          Defendants. | CASE NO.<br><br>**COMPLAINT FOR DAMAGES:**<br><br>**(1) BREACH OF CONTRACT**<br><br>**(2) ACTION FOR REASONABLE VALUE OF GOODS**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, ZL Technologies, Inc., alleges as follows:

1. Plaintiff, ZL Technologies, Inc. ("ZL"), is a California corporation with its principal place of business in Milpitas, Santa Clara County, California. ZL provides software and services for data management, data analysis and legal compliance, including eDiscovery, privacy, CCPA, FINRA, SEC 17a-4, DoD 5015 and GDPR.

2. Defendant, Western & Southern Financial Group, Inc. ("Western & Southern"), is an Ohio corporation with its principal place of business in Cincinnati, Hamilton County, Ohio. Western & Southern is the parent company to a number of subsidiaries offering life insurance, among other products and services.

3. ZL does not know the true names of Does 1-50 and will add the true names when they are known. Does 1-50 are agents, co-conspirators, aiders and abettors or responsible parties of defendants liable for damages sought in this complaint.

4. ZL and Western & Southern entered into a written contract in December of 2014.

## JURISDICTION

5. Jurisdiction is proper under 28 U.S.C. § 1332 as the amount in controversy exceeds $75,000, and there is complete diversity between plaintiff and defendant.

## DIVISIONAL ASSIGNMENT

6. Divisional assignment is proper in the San Jose Division pursuant to Civil L.R. 3-2(c) and (e), as Western & Southern entered into the contract in Santa Clara County; payments and the obligation to pay under the contract and its breach were in Santa Clara County, and the contract was to be performed by ZL in Santa Clara County.

7. The contract states that it shall be governed by the laws of the State of New York without regard to its conflict of law principles.

## FIRST CAUSE OF ACTION
## BREACH OF CONTRACT
**(Against Western & Southern)**

8. ZL incorporates the allegations of paragraphs 1-7 as set forth above.

9. The contract is marked confidential and as such is not attached to this complaint. The essential terms of the contract at issue in the complaint were Western & Southern's agreement to purchase 5,000 perpetual User licenses.

10. The contract provides that that License shall apply to one of the following permitted uses as set forth in the product schedule:

Per User License: i. Customer shall have the right to use such license for a User whose data is ingested into the archive and/or may access and use the licensed Product(s) at any time for both the data in their mailboxes and data on desktops or client machines that is processed by licensed Product(s) ("Active User"). Customer may freely transfer User Licenses from one User to another without an additional fee when the original User no longer requires access and is no longer permitted access to the Licensed Product and no new data associated with the User is being actively ingested into the Licensed Product (each an "Inactive User"). For purposes of clarity, User Licenses shall not be required for Inactive Users, and the data of such Inactive User may be maintained in the Licensed Product at no additional cost to Customer. Notwithstanding the foregoing, Customer shall be required to purchase additional User Licenses in the event that the number of Active Users exceeds the number of User Licenses. ii. Per-GB licensing applies when data cannot be attributed to the user and quantity of data per user varies widely, e.g., server- based file archiving, historical data ingestion, legacy data ingestion.

11. The contract further provides that ZL has audit rights to access data as is reasonably necessary to certify the number of User Licenses in use during the term of the agreement. The contract further provides for a True-Up process in the event that Western & Southern has Active Users in excess of the number of User Licenses purchased.

12. The contract further contains an anti-waiver provision that states: the failure of a Party to claim a breach of any term of this Agreement shall not constitute a waiver of such breach or the right of such Party to enforce any subsequent breach of such term.

13. The contract also contains an attorney's fees provision.

14. In May 2024, ZL learned that Western & Southern had been using ZL software far in excess of the 5,000 subscription licenses that Western & Southern paid for under the contract between the parties. Prior to this, Western & Southern did not notify ZL of its use of the software in excess of the number of licenses it

had purchased.

15. Subsequent to ZL's discovery of Western & Southern's overuse, the parties discussed the renewal of the contract. After ZL's indication that the renewal would need to take into account Western & Southern's actual number of users in excess of the previously purchased 5,000 licenses, Western & Southern provided a notice of termination of the contract.

16. ZL has demanded payment from Western & Southern with regard to its past overuse. As of the date of filing of this complaint, the amounts due have not been paid.

17. Western & Southern has breached the contract by using the software in excess of the number of licenses purchased; failing to meet its obligations under the contract to ensure its Users complied with the contract; and failing to purchase a license for each of its Users.

18. ZL has fully performed all of its obligations under the agreement except those that were prevented, waived or excused.

19. As a result of Western & Southern's breach, ZL has been damaged in an amount of at least $ 2,728,189.27, subject to further damages that may be revealed in discovery, plus interest at a legal rate.

Wherefore, ZL prays for judgment as set forth below.

## SECOND CAUSE OF ACTION
## REASONABLE VALUE OF GOODS
### (Against All Defendants)

20. ZL incorporates the allegations of paragraphs 1-19 as set forth above.

21. ZL licensed software to Western & Southern on a per-user basis, and Western & Southern was contractually obligated to ensure all use was in compliance with the agreement and no unauthorized use of the software occurred.

22. Defendants' use exceeded the number of purchased licenses and permitted uses under the contract.

23. To the extent any use of the software does not fall within the permitted use under the contract or was not used by a User as defined by the contract, such use was not authorized by the agreement between ZL and Western & Southern.

24. Any use by Defendants of the software in a manner other than permitted by the contract is in excess of the license rights, and Defendants are obligated to pay the reasonable value of such use.

## DEMAND FOR JURY TRIAL

25. ZL demands a Jury trial.

## PRAYER FOR RELIEF

Wherefore, ZL prays for judgment jointly and severally against Defendants as follows:

1. For general and special damages in the amount of at least $2,728,189.27, plus additional damages according to proof;

2. For attorneys' fees as permitted the contract and by law;

3. For interest at a legal rate;

4. For cost of litigation; and

5. For such other and further relief as the Court considers appropriate.

Date: January 23, 2025

ADAMSKI MOROSKI MADDEN CUMBERLAND & GREEN LLP

 /s/ Joshua M. George
Joshua M. George
Chase W. Martin
Attorneys for Plaintiff, ZL Technologies, Inc.

\L:DMC ACTIVE CLIENT CASES\ZL Technologies\License Overuse Issues\ZL v. Western & Southern\Pldgs\Complaint.docx